Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5467 | **DATE** | 12/18/2000 |
| **CASE TITLE** | CONSECO GROUP RISK MANAGEMENT CO., et al. vs. AHRENS FINANCIAL SYSTEMS, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Conseco's motion to dismiss AFS' counterclaims is granted in part and denied in part. Count VI is dismissed with prejudice. Counts III, VII and VIII are dismissed without prejudice. Conseco is directed to answer AFS's remaining counterclaims by January 3, 2001. ENTER MEMORANDUM OPINION AND ORDER.

*/s/ Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | DEC 27 2000 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | 00 DEC 26 PM 4:45 | docketing deputy initials | |
| SB | courtroom deputy's initials | | 12/18/2000 date mailed notice | |
| | | Date/time received in central Clerk's Office | jad77 mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CONSECO GROUP RISK MANAGEMENT )
CO., et al. )
) No. 00 C 5467
Plaintiffs, )
) Suzanne B. Conlon, Judge
v. )
)
AHRENS FINANCIAL SYSTEMS, INC. )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

Conseco Group Risk Management Company, Conseco Medical Insurance Company, and Conseco Life Insurance Company ("Conseco") sue Ahrens Financial Systems, Inc. ("AFS") for breach of contract and fiduciary duty, tortious interference with contractual relations and with prospective economic benefit, defamation, disparagement, damage to business and reputation, money owed and money had received, conversion, restitution, punitive damages, and injunctive relief. In its counterclaim, AFS sues Conseco for negligence (Count I), fraudulent misrepresentation (Count II), negligent misrepresentation (Count III), tortious interference with prospective business advantage (Count IV), breach of contract (Count V), breach of duty of good faith and fair dealing (Count VI), accounting (Count VII), and quantum meruit (Count VIII).[1] Conseco moves to dismiss AFS' counterclaims, pursuant to Fed.R.Civ.P. 12(b)(6).

---

[1] AFS has voluntarily agreed to dismiss its negligent misrepresentation and quantum meruit counterclaims.

## BACKGROUND

### I. The parties

For purposes of a motion to dismiss, the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the nonmovant. *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000). AFS is a Kansas corporation with its principal place of business in Kansas. Conseco Group Risk Management Company is an Indiana corporation with its principal place of business in Illinois. Conseco Life Insurance Company and Conseco Medical Insurance Company are Illinois corporations with their principal places of business in Illinois.

Conseco issued excess loss insurance treaties and policies to employers who wanted to limit the amount they would be required to pay for employees' claims to health insurance benefits. Employers would self-insure up to a certain amount and then obtain excess loss insurance for expenses/benefits exceeding the set limit. Conseco would spread the risk it insured throughout the insurance market by means of reinsurance contracts and treaties.

AFS became a Managing General Underwriter ("underwriter") for Conseco's excess loss business, pursuant to a contract entitled "Managing General Underwriting and Agency Agreement" (the "contract"). AFS entered into the contract with a Conseco subsidiary company on June 21, 1996. Conseco became a party to the contract on June 7, 1999, after acquiring the subsidiary.

### II. Relationship between the parties

Under the contract, Conseco served as an excess loss fronting company, retaining only a small portion of the underwriting risk. Prior to 1998, Conseco did little marketing of excess loss insurance

2

policies or reinsurance treaties. Marketing, claim handling, and insurance premium administration was left to AFS and other underwriters in the network.

In June 1998, Conseco's management decided to expand its excess loss insurance business. Without informing AFS, Conseco began to "direct write" excess loss business instead of relying on AFS and the underwriter network to write the business. As a result of this policy change, Conseco competed directly with AFS. In November 1998, the Senior Vice President of Conseco visited AFS and examined the underwriter system, which was AFS' proprietary "XPRT" rating system and Ahren's administration system.

Despite its decision to direct write some excess loss business, Conseco's management encouraged AFS to expand Conseco's excess loss business. In January 1999, Conseco requested access to information from AFS relating to the third-party administrators and producers of business. This information enabled Conseco to build a database of third-party administrators and other producers for later use in its own direct marketing excess loss business.

On July 1, 1999, AFS decided not to renew an agreement with its other insurance carrier. Conseco became AFS' sole excess loss insurance carrier. As a result, AFS transferred more business to Conseco. During August 1999, John Ahrens visited Conseco's office in Chicago and met with Patrick Nicholas ("Nicholas"), Conseco's Second Vice President in charge of excess loss business. Nicholas assured AFS that Conseco considered AFS to be a long-term strategic partner. He also stated Conseco would take responsibility for placing AFS business with a reinsurer.

Beginning in September 1999, Conseco repeatedly promised AFS that it would continue functioning in some capacity as an underwriter for Conseco. Consequently, AFS sought a new underwriter agreement. Conseco assured AFS the company would sign a new agreement and continued

3

to encourage AFS to quote and write new business on behalf of Conseco. Conseco asked AFS to draft a new agreement but then refused to sign it.

On or before October 1, 1999, each of the reinsurers used by AFS and Conseco stated their intention not to renew their agreements for the upcoming year. One reinsurer explained Conseco failed to provide adequate information. Nevertheless, Conseco continued to reassure AFS that Conseco would obtain reinsurance. Conseco never secured reinsurance for the 2000 year.

### III. Modifications to the parties' original agreement

On December 6, 1999, Conseco notified AFS that the company was immediately suspending AFS's underwriting authority. AFS received a letter the next day stating Conseco was terminating their underwriting agreement. Three days later, Conseco sent AFS a letter offering AFS a position as a sub-underwriter for Conseco beginning January 1, 2000. AFS refused the offer, which significantly changed the terms of their original agreement. Despite these communications, Conseco continued to treat AFS as its underwriter and continued to fulfill its responsibilities under the original agreement. On January 4, 2000, Conseco informed AFS that AFS had full authority to bind Conseco on excess loss insurance for the year 2000.

On January 19, 2000, Conseco and AFS management met in Kansas. Conseco expressed a desire to take over the administration of the excess loss business written by AFS and use AFS' underwriting program. At the time, Conseco only administered its own directly written excess loss premium, which was significantly lower than the premium administered by AFS. Conseco threatened to end its business relationship with AFS if AFS refused its requests. AFS agreed to Conseco's requests. In return, Conseco agreed to execute a license agreement and a new underwriting agreement with AFS. AFS turned over the underwriting software, but Conseco never signed any new agreements.

Beginning in January 2000, Conseco began to make various decisions that caused AFS to lose business. Conseco (1) placed new restrictions on insurance renewals; (2) increased premiums; (3) began to change its underwriting guidelines, causing customer frustration; (4) prohibited AFS from quoting excess loss business without Conseco's approval; (5) failed to underwrite or quote many of AFS' present customers; (6) usurped control over reinsurance funding of claim payments; and (7) failed to provide AFS with sufficient funds to pay 1999 claims.

On June 29, 2000, Conseco notified AFS that it was immediately leaving the excess loss insurance field. For quotes, applications, and policies currently pending, Conseco set harsh timelines for finalizing the excess loss policies. Conseco ultimately denied coverage to many groups due to their inability to meet the deadlines.

## DISCUSSION

### I. Motion To Dismiss Standard

In ruling on a motion to dismiss, the court considers "whether relief if possible under any set of facts that could be established consistent with the allegations." *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). A claim may be dismissed only if there is no set of facts that would entitle the plaintiff to relief based on the allegations in the complaint. *Vonderohe v. B & S of Fort Wayne, Inc.*, 36 F.Supp.2d 1079, 1081 (7th Cir. 1999). A motion to dismiss tests the sufficiency of the complaint, not its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

### II Choice Of Law

The parties dispute whether Illinois or Kansas law applies to this case. "A federal court exercising its diversity jurisdiction over state law claims must generally apply the choice-of-law rules of the state in which it sits." *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941);

*International Marketing, Ltd. v. Archer-Daniels-Midland Co., Inc.*, 192 F.3d 724, 729 (7th Cir. 1999).

AFS asserts counterclaims based on tort, contract, and accounting law. For each of these categories, Illinois courts apply the law of the state that has the most significant relationship to the occurrence or the parties. *Reid v. Norfolk & Western Railway Co.*, 157 F.3d 1106, 1110 (7th Cir. 1998) (most significant relationship test is used in tort law); *Gatx Leasing Corporation v. National Union Fire Insurance Co.*, 64 F.3d 1112, 1115 (7th Cir. 1995) (most significant relationship test used in contract law); *Woodward Park Imaging, Inc. v. Iwamoto*, 955 F.Supp. 1006, 1008 (N.D. Ill. 1997) (most significant relationship test used for accounting claims).

For tort law, courts consider the following factors in determining which forum has the most significant relationship: (1) the place of the injury; (2) the place of tortious conduct; (3) the domicile of the parties; and (4) the place where the relationship between the parties is centered. *Fredrick v. Simmons Airlines, Inc.*, 144 F.3d 500, 503-4 (7th Cir. 1998). Although each of these factors are considered, the place where the tort occurred usually governs. *Reid v. Norfolk & Western Railway Co.*, 157 F.3d 1106, 1110 (7th Cir. 1998) ("Illinois courts apply the law of the state in which the tort occurred unless another state has a more significant relationship to the occurrence or the parties"); *Spinozzi v. ITT Sheraton Corp., et al.*, 174 F.3d 842, 844 (7th Cir. 1999) (forum typically having the most significant relationship is where the tort occurred).

AFS' tort allegations are based on Conseco's conduct in carrying out its insurance business duties and misrepresentations Conseco made to AFS. In its response brief, AFS claims Conseco's tortious conduct took place in both Kansas and Illinois. Even if it could be argued some tortious conduct occurred in Kansas, there is no doubt the majority of the alleged tortious conduct occurred in Illinois. Conseco's place of business was in Illinois, and decisions regarding its loss insurance business

6

were made in Illinois. Therefore, any negligence or intentional interference with AFS' prospective business advantage arising from Conseco's business actions and decisions took place principally in Illinois. Similarly, all Conseco's alleged misrepresentations either took place at the August 1999 meeting in Chicago or were communicated by Conseco from Illinois.[2]

The fact that tortious behavior occurred primarily in Illinois is decisive for choice of law unless other factors suggest Kansas has a more substantial relationship to the case. Although the parties are domiciled in both Illinois and Kansas, more parties are domiciled in Illinois. Furthermore, the relationship between Conseco and AFS cannot be considered centered in Kansas. Both companies had various duties pertaining to their loss insurance business, and each carried out responsibilities from its respective business locale. The fact that the alleged injury occurred in Kansas is not sufficient by itself to warrant application of Kansas tort law. This is especially true in the context of counterclaims where the other party is claiming injury in Illinois.

For contract claims, the court focuses on (1) location of the contract's subject matter; (2) place of contract formation; (3) state in which contract negotiation occurs; (4) location of contract execution; and (5) domicile of the insured or insurer. *Gatx Leasing Corporation v. National Union Fire Insurance Co.*, 64 F.3d 1112, 1115 (7th Cir. 1995). AFS' breach of contract claims are based on an implied contract arising after January 1, 2000 from AFS' and Conseco's course of dealing. First, as AFS recognizes in its response brief, the subject matter of the contract has no bearing on this case.

---

[2]AFS alleges Conseco made the following misrepresentations: (1) AFS would be a "long range strategic partner;" (2) Conseco would "zealously pursue reinsurance for the year 2000;" (3) Conseco "would remain in the medical excess loss business and continue to utilize AFS as an [underwriter];" (4) Conseco "would execute a new ... Agreement between itself and AFS;" and (5) Conseco "would execute a non-exclusive software licensing agreement between itself and AFS regarding Conseco's use of the [underwriting] application."

7

Second, the parties were domiciled in both states, but more were domiciled in Illinois. Third, AFS acknowledges in its response brief that negotiations between the parties occurred in both Illinois and Kansas. Finally, the last two factors to consider, location of contract formation and performance, are essentially the same since AFS claims an implied contract was formed from course of dealing. As discussed above, both companies carried out numerous functions for their excess loss insurance business in their respective states. However, Conseco's Illinois activities are more relevant in a course of dealing claim. Only the business decisions and orders it makes could lead AFS to believe a contract between the parties exist. At one point in its response brief, AFS claims Conseco's only performance was to accept a portion of premiums collected by AFS in Kansas. This contradicts numerous other facts AFS alleged showing Conseco to increasingly play a larger role in their excess loss business. Both AFS' tort and contract law claims favor Illinois law.[3]

### III. AFS' Counterclaims

#### A. Negligence

Conseco contends AFS cannot recover damages for negligence because the parties' duties were listed in their underwriting contract. Tort claims cannot be based on contracts that were allegedly breached. *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 866 (1986). However, AFS alleges Conseco assumed duties outside of the agreement or the implied contract. Specifically, AFS contends Conseco assumed a duty to obtain reinsurance for the 2000 treaty year and a right to oversee and approve underwriting for the 2000 treaty year. If facts are proven consistent with these allegations, AFS can recover damages from Conseco under tort law.

---

[3] For purposes of AFS' accounting claim, Illinois law is favored for the reasons discussed with respect to tort and contract claims.

<em>8</em>

## B. Fraudulent misrepresentation

AFS sufficiently alleges fraudulent misrepresentation, even though each of Conseco's alleged misrepresentations were future-oriented.[4] Normally, representations relating to future events are not considered fraudulent. *Advent Electronics, Inc. v. Buckman,* 918 F.Supp. 260, 264 (N.D. Ill. 1996). "However, the general rule against the viability of promissory fraud is subject to an exception where the false promise or representation of intention of future conduct is the scheme or device to accomplish the fraud." *Id.* AFS alleges Conseco made false misrepresentations to induce AFS to eliminate its other insurance carrier and transfer all its business to AFS. AFS further alleges Conseco promised a new underwriting agreement to ensure Conseco would continue to administer Conseco's excess loss insurance. This is sufficient to allege a scheme to defraud.

## C. Tortious interference with prospective business advantage

AFS contends Conseco intentionally interfered with the business relationship between AFS and its policyholders. Under Illinois law, tortious interference with prospective economic advantage claim must include the following allegations: (1) plaintiff had a reasonable expectancy of a valid business relationship with a third party; (2) defendant knew of the prospective business relationship; (3) defendant intentionally interfered with the prospective business relationship such that the relationship never materialized; and (4) the interference caused damage. *Interim Health Care of Northern Illinois, Inc. v. Interim Health Care, Inc.,* 225 F.3d 876, 886 (7th Cir. 2000). Conseco does not dispute AFS has made each of these allegations. Instead, Conseco asserts it is free from liability because it engaged in lawful competition, which is a privileged interference. "This 'competitors privilege' arises when the business relation concerns a matter involving competition between the actor and the competitor." *A-*

---

[4]*See* footnote 2.

*Abart Electric Supply, Inc. v. Emerson Electric Co.*, 956 F.2d 1399, 1405 (7th Cir. 1992) (citations omitted). Although it may be true Conseco had a privilege to sell insurance directly to policyholders, selling insurance is not the sole basis for AFS' intentional interference claim. AFS contends Conseco improperly appropriated its underwriting administration, required AFS to accept unreasonable underwriting decisions, and left the insurance business in an unreasonable manner. AFS' allegations are sufficient to withstand a motion to dismiss its intentional interference counterclaim.

### D. Breach of contract

AFS contends Conseco breached an implied contract arising from the actions of Conseco after January 1, 2000. Conseco argues no such contract was ever created. It is an issue of fact whether the parties' course of dealing created an implied contract. Therefore, dismissal of AFS' breach of contract claim is not warranted.

### E. Breach of duty of good faith and fair dealing

Under Illinois law, a claim for breach of duty of good faith and fair dealing may not be brought independently of a contract claim. *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992). AFS' breach of duty of good faith and fair dealing counterclaim is dismissed with prejudice.

### F. Accounting

Under Illinois law, AFS must allege an inadequate remedy at law to meet the pleading requirements for an accounting claim. *Cumis Ins. Soc'y, Inc. v. Peters*, 983 F.Supp. 787, 797 (N.D. Ill. 1997). AFS has failed to meet this pleading requirement.

## CONCLUSION

Conseco's motion to dismiss AFS' counterclaims is granted in part and denied in part. Count VI is dismissed with prejudice. Counts III, VII and VIII are dismissed without prejudice. The motion is denied in all other respects.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

December 18, 2000